RETIREMENT SYSTEMS OF ALABAMA and the Circuit Court for Montgomery County, Alabama, Respondents–Appellants,

v.

J.P. MORGAN CHASE & CO., J.P. Morgan Securities Inc., Bank of America Corp., Banc of America Securities LLC, Citigroup Inc., Citigroup Global Markets Inc., (f/k/a/ Salomon Smith Barney Inc.) and Arthur Andersen LLP, Applicants–Appellees.

Docket No. 04–2275–CV.

United States Court of Appeals, Second Circuit.

Argued: Aug. 25, 2004.

Decided: Oct. 18, 2004.

---

J. Michael Rediker, Haskell Slaughter Young & Rediker, LLC, Birmingham, AL (William M. Slaughter, Thomas L. Krebs, Michael K.K. Choy, J. Vernon Patrick, Thomas T. Gallion III, Page A. Poerschke, Vincent J. Graffeo, Haskell Slaughter Young & Rediker, LLC, Birmingham, Alabama; Leo Kayser III, Haskell Slaughter Young & Rediker, LLC, New York, New York; John C. Jeffries, Charlottesville, Virginia, of counsel), for Respondents–Appellants.

Jay B. Kasner (Susan L. Saltzstein, Cyrus Amir–Mokri, Steven J. Kolleeny, of counsel), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for Applicants–Appellees J.P. Morgan Chase & Co., J.P. Morgan Securities Inc., Bank of America Corp., and Banc of America Securities LLC.

Martin London (Bruce Birenboim, Brad S. Karp, Eric S. Goldstein, Joyce S. Huang, of counsel), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York, for Applicants–Appellees Citigroup Inc. and Citigroup Global Markets Inc.

Eliot Lauer (Michael Moscato, of counsel), Curtis, Mallet–Prevost, Colt & Mosle

LLP, New York, New York, for Applicant–Appellee Arthur Andersen LLP.

Kevin Newsom, Alabama Solicitor General (Charles Campbell, Assistant Attorney General, of counsel; Troy King, Alabama Attorney General, on the brief), Office of the Alabama Attorney General, Montgomery, Alabama, for amicus curiae Alabama Attorney General.

Before: CABRANES and WESLEY, Circuit Judges.*

JOSÉ A. CABRANES, Circuit Judge.

At issue in this appeal is whether the United States District Court for the Southern District of New York (Denise Cote, *Judge*), the venue for multidistrict securities litigation arising from the collapse of WorldCom, was authorized to enter an injunction ordering an Alabama state court to postpone the trial of a related case until after the District Court had completed its own trial. On April 23, 2004, the District Court ordered the Alabama action to be rescheduled from October 18, 2004, to a date no earlier than sixty days following the completion of a class action trial that is scheduled to begin in the District Court on January 10, 2005. *See In re WorldCom, Inc. Sec. Litig.*, 315 F.Supp.2d 527 (S.D.N.Y.2004). The plaintiffs in the Alabama Action, collectively known as the Retirement Systems of Alabama ("RSA"), who are not plaintiffs in the securities litigation in the District Court, appeal from the injunction.

We conclude that the District Court's injunction was barred by the Anti–Injunction Act, 28 U.S.C. § 2283, which permits a federal court to enjoin a state court proceeding only where "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The District Court reasoned that the trial date of October 18, 2004 in the Alabama action would disrupt the District Court's own trial date of January 10, 2005, and that an injunction postponing the Alabama action was therefore "necessary in aid of its jurisdiction." *See In re WorldCom, Inc. Sec. Litig.*, 315 F.Supp.2d at 544–47. We hold that the "necessary in aid of its jurisdiction" exception to the Anti–Injunction Act does not permit a district court—even a district court managing complex, multidistrict litigation such as the WorldCom securities litigation—to enjoin state court proceedings simply to preserve its trial date.

## I. BACKGROUND

### A. The Securities Litigation in the District Court

On June 25, 2002, WorldCom announced a massive restatement of its financial statements, precipitating the filing of numerous individual and class actions in state and federal courts across the country.*

On August 15, 2002, numerous class actions that had been filed in the Southern District of New York were consolidated before Judge Cote under the caption *In re WorldCom, Inc. Securities Litigation.* The Consolidated Class Action Complaint named former officers and directors of WorldCom, underwriters of WorldCom's May 2000 and May 2001 bond offerings, WorldCom's former auditor Arthur Andersen, WorldCom's chief outside analyst Jack B. Grubman, and Grubman's employers, Salomon Smith Barney Inc. and Citi-

---

* Because the Honorable Chester J. Straub recused himself prior to oral argument, this case was decided by a two-judge panel. *See Murray v. NBC,* 35 F.3d 45 (2d Cir.1994).

* The facts are taken principally from the District Court's opinion. *See In re WorldCom, Inc. Sec. Litig.,* 315 F.Supp.2d 527, 530–41 (S.D.N.Y.2004).

group Inc. The complaint asserted claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

WorldCom filed for bankruptcy in July 2002—the largest bankruptcy filing in United States history. Thereafter, the defendants in various state court actions removed those actions to federal court on the ground that they were related to WorldCom's bankruptcy. The Judicial Panel on Multidistrict Litigation ("MDL Panel") ordered that actions pending in federal courts across the country, including actions that had been removed from state court, be centralized in the Southern District of New York before Judge Cote. Prior to the MDL Panel's order, however, a handful of actions removed to federal court had been remanded to state court. One of these state court actions, *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, No. CV 2002–1947(a)–PR (Ala. Cir. Ct., Montgomery County) (the "Alabama Action"), is pending in the Alabama Circuit Court for Montgomery County, and is the subject of this appeal.

In December 2002, the consolidated class action and the actions transferred by the MDL Panel—collectively, the "Securities Litigation"—were consolidated for pretrial purposes. The District Court certified a class on October 24, 2003, and shortly thereafter set a date of January 10, 2005 for the trial of the consolidated class action, with the trials of the individual actions to follow.

In November 2003, the defendants in the Securities Litigation requested that plaintiffs' counsel in one of the remanded state court actions be required to participate in depositions in the Securities Litigation to avoid duplicative discovery. This request led to an exchange in which the parties, Judge Cote, and the state court judges in the remanded actions attempted to coordinate discovery in their related actions. On January 30, 2004, Judge Cote issued a Discovery Coordination Order (the "Coordination Order"), and sent it to the state court judges in the three remanded actions (the Alabama Action, and actions in Illinois and Pennsylvania) that were approaching or were already in the discovery stage. The Coordination Order, which invited the state judges to sign it if they wished to adopt it, provided that "[d]iscovery and trial in the [remanded] [a]ctions shall not delay or interfere with discovery in and trial of the Class Action" in the Securities Litigation in the Southern District of New York, and that the first trial would be the class action trial in the Securities Litigation, scheduled for January 10, 2005. *Id.* at 535.

The state court judges in each of the three remanded actions have generally coordinated discovery in those actions with discovery in the Securities Litigation. Additionally, the state court judges in two of the remanded actions, those in Illinois and Pennsylvania, scheduled their respective trials to follow the class action trial in the Securities Litigation. In contrast, Judge Charles Price, presiding over the Alabama Action, declined to adopt all the principles of the Coordination Order, and scheduled trial to begin on October 18, 2004—three months in advance of the class action trial date in the Securities Litigation.

## B. The Alabama Action

The Alabama Action was filed on July 15, 2002, two-and-one-half months after the first class action was filed in the Southern District of New York. The complaint alleges violations of federal and Alabama statutory and common law, including claims under Sections 11, 12, and 15 of the Securities Act that are also pleaded in the

Securities Litigation. The defendants include two former WorldCom officers (former CFO Scott Sullivan and former CEO Bernard J. Ebbers), six investment banks that are also named in the Securities Litigation (Bank of America Corp., J.P. Morgan Chase & Co., Banc of America Securities LLC, J.P. Morgan Securities, Inc., Citigroup Inc., and Citigroup Global Markets Inc.), Arthur Andersen, and Bear Stearns & Co. Only Bear Stearns is not a defendant in the Securities Litigation. As described by the District Court:

> The Alabama Action arises from and pleads the same course of conduct on which the *Securities Litigation* is premised. It seeks damages for one of the two massive bond offerings at issue in the *Securities Litigation*—the May 2001 bond offering—as well as for Intermedia bonds sold in October of 2001 by Bear Stearns. Even the latter category of claims, however, emanates from the same underlying financial fraud within WorldCom that is the basis of the claims in the *Securities Litigation.*

*Id.* at 537. The plaintiffs in the Alabama Action are several retirement funds, collectively referred to as the Retirement Systems of Alabama[1] ("RSA"). Notably, RSA is not a party to any of the various federal actions consolidated in the Securities Litigation, and expressly opted out of the consolidated class action.

The Alabama Action was removed to the United States District Court for the Middle District of Alabama, but then remanded to state court on September 24, 2002. The defendants in the Alabama Action appealed the remand order, and on June 18, 2003, the Eleventh Circuit dismissed their

appeal for lack of appellate jurisdiction. On January 12, 2004, the Supreme Court denied the defendants' petition for a writ of certiorari.

On February 17, 2004, the defendants in the Alabama Action moved in that case for the adoption of Judge Cote's Coordination Order. On March 5, before Judge Price had ruled on the motion, defendants moved in the alternative to modify Judge Price's scheduling order by extending the trial date of October 18, 2004 by nine months. On March 18, Judge Price denied defendants' motions.

## C. The District Court's Injunction

After Judge Price denied defendants' requests for a later trial date, defendants applied to Judge Cote, pursuant to the All Writs Act, 28 U.S.C. § 1651, for an order directing RSA to show cause why a writ should not issue that would stay trial of the Alabama Action until after the conclusion of the class action trial in the Securities Litigation. The District Court entered the requested Order to Show Cause on March 23, 2004. RSA and Judge Price filed responses to the Order, and Alabama's Attorney General filed an *amicus curiae* brief in opposition to the All Writs Act application.

On April 23, 2004, the District Court ordered that "the Circuit Court of Alabama is enjoined from resolving any summary judgment motion or beginning the trial in [the Alabama Action] until at least sixty days following the entry of a verdict in the class action trial in the *Securities Litigation.*" *WorldCom*, 315 F.Supp.2d at 551. The District Court rejected plaintiffs' argument that the injunction was preclud-

---

1. The RSA consists of the Employees' Retirement System of Alabama, the Teachers' Retirement System of Alabama, the Public Education Employees' Health Insurance Fund, the Public Employees' Individual Retirement Account Fund, the Clerks' and Registers' Supernumerary Fund, the Wildlife and Freshwater Fisheries Fund, the Alabama Cultural Resources Preservation Trust Fund, and the Alabama Trust Fund.

ed by the Anti–Injunction Act, 28 U.S.C. § 2283, which bars a federal court from enjoining a state court proceeding unless the injunction is "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Court held that the injunction was necessary in aid of its jurisdiction because it was "necessary to preserve the schedule in the *Securities Litigation* and to keep the federal MDL litigation on its own 'path to judgment.'" *WorldCom,* 315 F.Supp.2d at 547; *see also id.* at 544 ("A limited injunction of the Alabama Action is warranted here to the extent that its schedule interferes with the class action trial in the *Securities Litigation.*").

The District Court determined that, "[i]f the Alabama Action proceeds to trial in October, or at any time before the class action trial, it will inevitably delay the beginning of the class action trial far beyond January 10." *Id.* at 545. The District Court identified two causes for the delay. First, the Court found that "a decision on a summary judgment motion or any verdict in the Alabama Action will necessarily engender complicated and time-consuming motion practice in the [class action] in order to permit the ramifications, including any collateral estoppel effect, of that litigation to be determined before the class action trial begins." *Id.* Second, the Court found that "[t]he energies of the defendants in the [class action] who are also defendants in the Alabama

Action will necessarily be diverted by the need to prepare for and participate in the Alabama Action's October trial." *Id.* at 546. The Court concluded that "[t]he date for the class action trial … will be held hostage to the Alabama Action, and this Court's ability to control the schedule of this complex, multi-district securities litigation will be hamstrung." *Id.* at 545.

The District Court also noted that "following an enormous investment of effort, [the class action] is at an advanced stage," *id.* at 544, that "the Alabama Plaintiffs have not been able to articulate any valid reason why their action should be tried in 2004," *id.* at 547, and that the injunction "will impact only the timing" of the Alabama Action, *id.*

### D. Proceedings in this Court

On April 28, 2004, RSA and the Circuit Court filed an interlocutory appeal from the District Court's injunction.[2] On May 11, RSA moved in the District Court for a stay of the injunction, which was denied. This Court, on June 14, granted RSA's motion to expedite the appeal. On June 17, RSA filed a motion for a stay in this Court, which the motions panel referred to the merits panel.

We heard oral argument on the morning of August 25, 2004. That afternoon, we entered a summary order vacating the District Court's injunction, and stating that an opinion would follow in due course.[3]

2. The Attorney General of Alabama filed on June 21, 2004 an appellant's brief on behalf of the Circuit Court of Montgomery County. This Court determined that RSA, and not the Attorney General, was the real party in interest, and treated the Attorney General's brief as an *amicus* brief. *See Retirement Systems of Alabama,* No. 04–2275-CV, 2004 WL 1932737 (2d Cir. June 18, 2004), Docket entry of June 21, 2004.

3. After we entered the summary order, defendants in the Alabama Action who are appellees before us reached a settlement with RSA. These defendants include Bank of America Corp., J.P. Morgan Chase & Co., Banc of America Securities LLC, J.P. Morgan Securities, Inc., Citigroup Inc., Citigroup Global Markets Inc., and Arthur Andersen. The settlement became effective October 8, 2004. *See* Letter from appellees' counsel of Oct. 8, 2004, at 1. It does not, however, render the

## II. DISCUSSION

RSA argues on appeal that the District Court's injunction (1) violated the Anti–Injunction Act, (2) violated the Eleventh Amendment, (3) was contrary to the *Rooker–Feldman* doctrine, and (4) was contrary to the abstention required by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Because we hold that the injunction violated the Anti–Injunction Act, we do not reach the other grounds.

### A. Standard of Review

■ We review the District Court's issuance of an injunction for abuse of discretion. *See In re Baldwin–United Corp.*, 770 F.2d 328, 334 (2d Cir.1985). To the extent a district court's injunction involves questions of law, review is plenary; but a district court's findings of fact may be overturned only if clearly erroneous. *See id.*

■ The District Court found that an injunction was necessary in aid of its jurisdiction, and concluded that an injunction was therefore permissible under the All Writs Act and the Anti–Injunction Act. *See WorldCom*, 315 F.Supp.2d at 544, 551. We review the District Court's factual finding of necessity for clear error, *see Baldwin–United*, 770 F.2d at 336, and its interpretation of the All Writs Act and the Anti–Injunction Act *de novo*.

### B. The All Writs Act and the Anti–Injunction Act

#### 1. Statutory language

The All Writs Act, 28 U.S.C. § 1651(a), provides federal courts with the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This grant of authority is limited by the Anti–Injunction Act, 28 U.S.C. § 2283, which bars a federal court from enjoining a proceeding in state court unless that action is "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[4] If the District Court's injunction was in fact necessary in aid of its jurisdiction, then the injunction was authorized by the All Writs Act, and was not barred by the Anti–Injunction Act. If, as RSA argues, the injunction was not necessary in aid of the District Court's jurisdiction, then it exceeded the District Court's authority under the All Writs Act and—in the absence of another applicable statutory exception—violated the Anti–Injunction Act.[5]

In interpreting the Anti–Injunction Act, the Supreme Court has directed that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the

---

instant appeal moot, since the District Court's injunction affects the trials before the Alabama Circuit Court of three non-settling defendants in the Alabama Action—Bear Stearns & Co., Ebbers, and Sullivan.

4. 28 U.S.C. § 2283 provides, in full, that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

5. Because of the similarities in statutory language, cases interpreting the "necessary or appropriate in aid of their respective jurisdictions" language of the All Writs Act are useful in interpreting the "necessary in aid of its jurisdiction" language of the Anti–Injunction Act, and *vice versa*. Cf. *Baldwin–United*, 770 F.2d at 335 ("[C]ases interpreting [the 'necessary in aid of its jurisdiction'] clause of the Anti–Injunction Act have been helpful in understanding the meaning of the All–Writs Act.").

controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 297, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

## 2. Injunctions in *in rem* and *in personam* actions

The Supreme Court in *Kline v. Burke Construction Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922), addressing the propriety of enjoining state-court actions under the All Writs Act, distinguished *in rem* from *in personam* actions. A federal court with jurisdiction over an *in rem* action may enjoin a later-filed state court action involving the same *res,* because the effect of filing the *in rem* action in federal court "is to draw to the federal court the possession or control, actual or potential, of the *res,*" and a state court's exercise of jurisdiction "necessarily impairs, and may defeat," the federal court's jurisdiction. *Id.* at 229, 43 S.Ct. 79. In contrast, an *in personam* action involves a controversy over liability rather than over possession of a thing: "[A] controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." *Id.* at 230, 43 S.Ct. 79. The Court held that "where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded." *Id.* The Court concluded that a federal district court, hearing a suit in equity arising from a contract dispute, lacked authority under the All Writs Act to enjoin a parallel action in Arkansas state court for breach of contract. *See id.* at 227–28, 235, 43 S.Ct. 79.

Since *Kline,* the Supreme Court has never held that a district court may enjoin, as necessary in aid of the district court's jurisdiction, a parallel *in personam* state action. *See Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 642, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) (plurality opinion) ("We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court . . . ."). There is no dispute that the Securities Litigation, although a complex, multidistrict litigation, is an *in personam* action against defendants. Defendants argue that, under our decision in *In re Baldwin–United Corp.,* 770 F.2d 328, the Securities Litigation is the "virtual equivalent of a *res,*" *id.* at 337, so that the District Court was authorized to enjoin a later-filed related action in the Alabama Circuit Court.

## 3. *Baldwin–United* and its application

We recognized in *Baldwin–United* that an injunction may be appropriate even in *in personam* actions under certain limited circumstances. *Baldwin–United* involved a federal multidistrict securities action brought by a class of annuity holders against twenty-six broker-dealers of the annuities. *See* 770 F.2d at 331. Eighteen of the twenty-six broker-dealer defendants signed stipulations of settlement with the plaintiff class, and the district court gave preliminary approval to the settlements and scheduled a fairness hearing. *See id.* at 332. Representatives of forty states in the National Association of Attorneys General, who were not parties to the lawsuit, expressed concern that the proposed settlement would not adequately compensate class members. The State of New York gave notice of its intent to file a *parens patriae* action in a New York court to seek restitution on behalf of the New York citizens in the plaintiff class. *See id.* at 333. The district court enjoined the states pursuant to the All Writs Act from filing suit in state courts, reasoning that any such lawsuits would "likely [ ] impair [the] fed-

eral court's jurisdiction" by undermining the settlements reached with the eighteen defendants and the ongoing settlement negotiations with the other eight defendants. *See id.* Thirty-one of the states appealed, claiming that the district court had exceeded its authority under the All Writs Act. *See id.* at 331.

■ We held that the district court's injunction was authorized under the All Writs Act.[6] We acknowledged that "the mere existence of a parallel lawsuit in state court that seeks to adjudicate the same *in personam* cause of action does not in itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action." *Id.* at 336. We held, however, that "[a]s for the [18] defendants participating in the stipulated settlements, ... the injunction was 'necessary or appropriate in aid of' the court's jurisdiction," *id.* at 336, because "[t]he circumstances faced by [the district court] threatened to frustrate proceedings in a federal action of substantial scope, which had already consumed vast amounts of judicial time and was nearing completion," *id.* at 337. We further explained:

> The existence of multiple and harassing actions by the states could only serve to frustrate the district court's efforts to craft a settlement in the multidistrict litigation before it. The success of any federal settlement was dependent on the parties' ability to agree to the release of any and all related civil claims the plaintiffs had against the settling defendants based on the same facts. If states or others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certainty about the finality of any feder-

al settlement. Any substantial risk of this prospect would threaten all of the settlement efforts by the district court and destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims.

*Id.* at 337. We concluded, "[i]n effect, unlike the situation in the *Kline v. Burke Construction Co.* line of cases, the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a res over which the district judge required full control." *Id.*

We held that the question was "closer" as to the class's claims against the eight broker-dealer defendants who had not yet settled:

> So long as there is a substantially significant prospect that these 8 defendants will settle in the reasonably near future, we conclude that the injunction entered by the district court is not improper. If, however, at some point in the continued progress of the actions against the remaining 8 defendants it should appear that prompt settlement was no longer likely, we anticipate that upon application the injunction against parallel actions by the states might be lifted; in that event the situation would fall within the [*Kline*] rule that *in personam* proceedings in state court cannot be enjoined merely because they are duplicative of actions being heard in federal court.

*Id.* at 338. We therefore affirmed the district court's injunction.

Clearly, our decision in *Baldwin–United* did not create a blanket rule or presumption that a federal court in any multidistrict action may enjoin parallel state pro-

---

6.  Our decision interpreted and applied the All Writs Act and not the Anti–Injunction Act. The Anti–Injunction Act does not apply where, as in *Baldwin–United*, a state court action has not yet been filed. *See Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *see also* note 5, *ante.*

ceedings.[7] We held that an injunction of related state court proceedings could be warranted even in an *in personam* action, but it was crucial to our analysis that most of the defendants had already settled, and that there was a "substantially significant prospect that [the other eight defendants] will settle in the reasonably near future." *Id.* Indeed, we added that if "it should appear that prompt settlement was no longer likely ... the situation would fall within the [*Kline*] rule that *in personam* proceedings in state court cannot be enjoined merely because they are duplicative of actions being heard in federal court." *Id.*

Defendants argue that here, as in *Baldwin–United,* an injunction was necessary to prevent proceedings in the Alabama Action from thwarting settlement discussions in the Securities Litigation. They also argue that, even setting aside the prospects of settlement, the injunction was proper because a trial in the Alabama Action would interfere with the trial schedule in the Securities Litigation.

### i. Whether the injunction was justified as necessary to preserve the prospects of settlement

■ Defendants' first argument—that the District Court's injunction was justified under *Baldwin–United* by the need to protect the possibility of settlement in the Securities Litigation—can be quickly rejected.

The District Court did not rely on the prospect of a prompt settlement in concluding that an injunction was proper. Nevertheless, defendants assert that, at the time of the District Court's injunction, "[t]he parties had been involved in settlement discussions under the auspices of two federal judicial officers, which would alone be sufficient under *Baldwin–United* to sustain the district court's conclusion." Appellees' Br. at 36 (citations omitted).

Defendants do not directly allege that here, as in *Baldwin–United,* there was a "substantially significant prospect [of settlement] in the reasonably near future," 770 F.2d at 338, or that "prompt settlement was ... likely," *id.* They simply note that (1) settlement discussions in fact occurred, and (2) on May 7, 2004, two weeks after the District Court's injunction, two appellees—Citigroup Inc. and Citigroup Global Markets Inc.—signed a Memorandum of Agreement with the plaintiff class in the Securities Litigation, settling the class action claims. *See In re WorldCom, Inc. Sec. Litig.,* Nos. 02 Civ. 3288, 02 Civ. 4816, 2004 WL 1064481, at *1 (S.D.N.Y. May 12, 2004). Yet the fact that settlement discussions occurred in no way suggests that prompt settlement was likely. Nor can the District Court's injunction be retroactively justified by the bare fact that, two weeks later, two defendants settled the class action claims against them.

Even if defendants had demonstrated that, as in *Baldwin–United,* a prompt settlement in the Securities Litigation was likely, they have failed to explain how the District Court's injunction was necessary to protect that prospective settlement. Defendants therefore have not shown that the rationale of *Baldwin–United*—protecting an actual or impending settlement in a federal action from being undone or thwarted by state-court litigation—justifies the District Court's injunction of the Alabama Action.

### ii. Whether the injunction was justified as necessary to preserve the District Court's trial date

■ The District Court found that the injunction was necessary in aid of its juris-

---

**7.** We reject as unfounded defendants' contention that *Baldwin–United* created a presumption that multidistrict class actions should be regarded as *in rem* actions.

diction because an October 2004 trial in the Alabama Action would "inevitably delay the beginning of the class action trial far beyond January 10[, 2005]." *WorldCom,* 315 F.Supp.2d at 545. The Court relied on broad language in *Baldwin–United* that the " 'need to enjoin conflicting state proceedings arises because the jurisdiction of a multidistrict court is analogous to that of a court in an in rem action ... where it is intolerable to have conflicting orders from different courts.' " *Id.* at 542 (quoting *Baldwin–United,* 770 F.2d at 337) (emphasis omitted). As discussed above, *Baldwin–United* did not hold that multidistrict class actions are, in general, to be deemed virtual *in rem* proceedings; it involved circumstances where an injunction was necessary to preserve a settlement or the prospects of an imminent settlement. Defendants nonetheless argue that there are other circumstances, including the circumstances of this case, in which a district court may, as necessary in aid of its jurisdiction, enjoin a related state-court proceeding.

As an initial matter, we note that a federal district court, even assuming it has some interest in avoiding delay in its own proceedings, has no interest—no interest that can be vindicated by the exercise of the federal injunction power—in being the *first* court to hold a trial on the merits. We have held that a district court may not issue an injunction simply to be the first court to reach a judgment and thereby avoid issues of collateral estoppel:

> There is no reason why [a] state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation. The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is a result which should be welcomed to avoid the task of reconsidering

issues which have already been settled by another competent tribunal.

*Vernitron Corp. v. Benjamin,* 440 F.2d 105, 108 (2d Cir.1971). Accordingly, the District Court could only have sought to justify its injunction as necessary to preserve its trial date, rather than as necessary to allow it to hold the first trial.

At issue, therefore, is whether an injunction that is necessary to avoid delay in the district court is thereby necessary in aid of the district court's jurisdiction. No court of appeals has extended the All Writs Act so broadly (or construed the Anti–Injunction Act so narrowly). For example, in *In re Diet Drugs,* 282 F.3d 220, 233–39 (3d Cir.2002), the Third Circuit upheld a district court's injunction of state court proceedings in circumstances similar to *Baldwin.* The district court had already approved a preliminary settlement when plaintiffs in a parallel state class action moved in state court for an order "opting out" from the federal plaintiff class all the members of the state plaintiff class. *Id.* at 227. Like *Baldwin, Diet Drugs* therefore involved efforts by state court plaintiffs to undo or thwart a settlement in a federal class action.

Other circuits have affirmed injunctions of state-court proceedings in circumstances not involving settlement, but these authorities are also unavailing to defendants. In *Newby v. Enron Corp.,* 338 F.3d 467 (5th Cir.2003), the Fifth Circuit upheld a district court's injunction forcing parties to withdraw their motions for temporary injunctions in a parallel state proceeding, and barring those parties from requesting other temporary injunctions from the state court without leave of the district court. *Id.* at 473. The district court had found [1] that the injunctions sought in state court threatened to interfere with the federal court's determinations as to whether or not injunctions should issue,

[2] that there was a danger of both duplicate and inconsistent injunctive relief that could expose the ... defendants to serious risk, and [3] that some of the relief requested in the state court injunctions duplicated relief granted by the federal court and thus collaterally attacked the district court's ruling.

*Id.* at 475. The instant case, in contrast, does not involve duplicative motions for injunctive relief, and does not expose defendants to the risk of inconsistent injunctions. It only risks subjecting defendants to simultaneous litigation in federal and state courts—a familiar feature of our federal system.[8]

Similarly, in *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1198 (7th Cir.1996), the district court entered an injunction barring discovery, in a parallel state proceeding, of a confidential agreement between a drug manufacturer and its attorney. The Seventh Circuit stated that "the district court quite reasonably believed that the plaintiffs were resorting to the state courts for the specific purpose of evading its ruling denying discovery of the [confidential] agreement." *Id.* at 1202. The Court held that, "[w]here a litigant's success in a parallel state court action would make a nullity of the district court's ruling, and render ineffective its efforts effectively to manage the complex litigation at hand, injunctive relief is proper." *Id.*[9] In *Winkler,* therefore, the state court proceeding threatened

to negate the district court's injunction by exposing confidential information that the district court sought to protect. Here, in contrast, neither defendants' rights to proceed in federal court, nor their interests in that litigation, are in any way thwarted by having to defend an action in state court.

Defendants' position—that a district court, in multidistrict class action litigation that is nearing trial, may enjoin related state proceedings to avoid delay[10]—is flawed because it does not admit of principled limits. Any time parallel state and federal actions are proceeding against the same defendant, it is conceivable that occurrences in the state action will cause delay in the federal action, by provoking motion practice in federal court regarding the effects of state-court rulings, or simply by diverting the attention of the defendant. Such a rule would in effect create an additional exception to the Anti–Injunction Act for circumstances where a federal court finds it *convenient* to enjoin related state proceedings—an approach contrary to the Supreme Court's direction that we construe doubts about the permissibility of an injunction "in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R.,* 398 U.S. at 297, 90 S.Ct. 1739.

We therefore hold that a federal court's injunction of state proceedings does

8. In any event, as of this writing, defendants' recent settlement in the Alabama Action has reduced the likelihood of simultaneous litigation. *See* note 3, *ante.*

9. The Seventh Circuit ultimately held, however, that the district court based its injunction on "inadequate facts," and vacated the injunction. *Id.* at 1205–06.

10. This position, while not articulated crisply in defendants' brief, seems to be the narrowest possible holding that would allow us to

affirm the District Court's injunction. Defendants' brief, which argues that the District Court's injunction was necessary in the circumstances of this case, is less than clear about what rule should apply in future cases. *See, e.g.,* Appellees' Br. at 26 ("[T]he controlling question ... is whether a state court proceeding has a high probability of threatening the integrity of the federal litigation."); *id.* at 28 ("[T]he controlling fact is ... whether there is a showing that the parallel state court proceeding potentially or actually interferes with the federal action.").

not fall within the "necessary in aid of its jurisdiction" exception to the Anti–Injunction Act—and is not authorized by the "necessary or appropriate in aid of their respective jurisdictions" language of the All Writs Act—where the only basis for that injunction is avoidance of the delay that would result from a trial in the state action.[11]

■ Finally, it should be noted that the District Court's observations that "the Alabama Plaintiffs have not been able to articulate any valid reason why their action should be tried in 2004," 315 F.Supp.2d at 547, and that the injunction will affect only the timing of the Alabama Action, *id.*, are simply not relevant to whether its injunction was barred by the Anti–Injunction Act. In requiring that an injunction be "necessary in aid of" a district court's jurisdiction, the Anti–Injunction Act does not invite district courts to balance the interests of state courts against their own. Nor does the statutory language contain an exception for injunctions of limited duration.

### C. Other Claims

Because we hold that the District Court's injunction was inconsistent with the All Writs Act and the Anti–Injunction Act, we do not address RSA's alternative argument that the injunction violated the Eleventh Amendment immunity of RSA as an arm of the State of Alabama. *See, e.g., Hutchinson v. Proxmire,* 443 U.S. 111, 122, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) ("Our practice is to avoid reaching constitutional questions if a dispositive nonconstitutional ground is available."); *Ashwan-*

*der v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *Anobile v. Pelligrino,* 303 F.3d 107, 123 (2d Cir.2002) ("Principles of judicial restraint caution us to avoid reaching constitutional questions when they are unnecessary to the disposition of a case."). Nor need we address RSA's claims on appeal under the *Rooker–Feldman* doctrine or under the principles of abstention stated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

### CONCLUSION

We hold that a district court may not, consistent with the All Writs Act and the "necessary in aid of its jurisdiction" exception to the Anti–Injunction Act, enjoin a state-court trial in order to avoid delay in the district court's trial. The District Court's judgment is therefore reversed, and its injunction is vacated. We remand for further proceedings consistent with this opinion.

---

11. Because we hold that the District Court erred as a matter of law in interpreting the Anti–Injunction Act and the All Writs Act, we have no occasion to review the District Court's factual determination that an injunction was necessary to preserve the court's trial date. In other words, we assume for the argument that the District Court correctly concluded that, absent an injunction, it would not be able to proceed with its January 2005 trial date.